**Raymond MILLS, Plaintiff-Appellant,**

**and**

**Harry F. Simmons, Plaintiff,**

**v.**

**The LONG ISLAND RAIL ROAD COMPANY et al., Defendants-Appellees.**

**No. 800, Docket 74–2559.**

United States Court of Appeals, Second Circuit.

Argued March 27, 1975.

Decided April 17, 1975.

Joseph P. Napoli, New York City, for plaintiff-appellant.

Richard H. Stokes, Jamaica, N. Y. (George M. Onken, Brian J. Barrett, Jamaica, N. Y., of counsel), for defendant-appellee, Long Island Rail Road.

Thomas J. Higgins, Roslyn Heights, N. Y. (Edward T. Brown, Smithtown, N. Y., of counsel), for defendant-appellee, United Transp. Union.

Before MULLIGAN and TIMBERS, Circuit Judges, and THOMSEN,* Senior District Judge.

MULLIGAN, Circuit Judge:

This is an appeal from an order dated November 1, 1974 of the United States District Court, Eastern District of New York, Hon. Orrin G. Judd, *District Judge*, denying the plaintiffs' motion to remand the case to the state court, granting the defendants' motion for summary judgment and directing judgment to dismiss the complaint. The pertinent facts are fully set forth in the memorandum opinion of Judge Judd dated October 30, 1974, not yet officially reported. In essence, the dispute relates to procedures for the disciplining of Long Island Rail Road employees for "run failures," i. e., unexcused absences from duty at the time the employee's train is due to depart. The plaintiff Mills is Local Chairman-Passenger of Local 645 of the United Transportation Union and a member of its General Committee of Adjustment.[1] He received a suspension of 15 days for a third run failure, and of 30 days for a fourth run failure. Because of an alleged fifth run failure Mills was dismissed from service on June 1, 1974. The action was initially commenced in the Supreme Court of New York, Suffolk County but was subsequently removed to the district court below.

The complaint urges that the disciplinary procedures involving run failures, adopted by the Rail Road and the Union by letter agreements made on June 4, 1973 and December 14, 1973, were invalid since they were made by the General Chairman of the Union without approval of the Union's General Committee of Adjustment or the members of the Union, and because they violated due process constitutional rights.

It is undisputed that before the letter agreements became effective an employee could be dismissed or suspended for a *first* run failure and that in determining sanctions the Rail Road could count run failures occurring at any time during the employee's entire service career. Under the letter agreements here attacked a first run failure instead resulted only in a "talk session" with an Assistant Superintendent or his representative; a second run failure involved a "reprimand"; third and fourth run failures resulted in 15 and 30 day suspensions, respectively; and a fifth run failure resulted in dismissal. Also, the successive impositions of the sanctions involved in these steps had to accrue within a 12 month period; any older run failures would not be counted and in fact would be deleted from the employee's record. The letter agreements provided no hearings for the first four steps but did provide for appeals pursuant to Article 42(k) of the original collective-bar-

---

* Of the District of Maryland, sitting by designation.

1. The other named plaintiff-employee, Harry F. Simmons, has not appealed from the order below.

gaining agreement and for a formal hearing prior to permanent discharge.

The court below found federal jurisdiction based on the Railway Labor Act, 45 U.S.C. § 151 et seq. but found that here the plaintiffs had failed to exhaust the administrative remedies provided by the Act,[2] as well as internal union appeal remedies, discussed below, which were mandated by the Union Constitution.[3]

■■■■ The charge that the General Chairman was without power to bind the union in the letter agreements because the General Committee, which has such power exclusively except when between sessions, was in fact not between sessions at the times the agreements were entered into, is an internal union controversy which could properly be raised under existing union procedures but was not raised by the plaintiffs here. Article 75 of the Union Constitution provides for a number of different internal appeals, including an appeal "from an action or decision of a General Chairman to the General Committee of Adjustment," and thence to a Board of Appeals. Plaintiff Mills, as a member of the General Committee of Adjustment, was presumably familiar with these appellate processes.

Speaking generally, failure to exhaust internal administrative remedies can preclude judicial relief. See, e. g., Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 210, 213–14, 65 S.Ct. 235, 89 L.Ed. 187 (1944). Plaintiff's reply to this is that the exhaustion of internal remedies would somehow be futile. We do not agree. Certainly an appeal of the Chairman's action to the very body he was supposedly circumventing would seem to provide the necessary relief, without requiring the intervention of a court. Cf. Glover v. St. Louis-S. F. Ry., 393 U.S. 324, 329–31, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). Plaintiff's reliance on Finnerty v. Cowen, 508 F.2d 979 (2d Cir. 1974) is of no avail; there, the court found that exhaustion is not required when the "very administrative procedure under attack is the one which the agency says must be exhausted," id. at 982–83, which is not the situation which now confronts us.[4] Moreover, we would point out that plaintiff Mills *has* appealed his suspensions for third and fourth run failures to the American Arbitration Association (AAA) pursuant to Article 42 of the collective-bargaining agreement entered into between Rail Road and the Union. If Mills is success-

**2.** The Act created a National Railroad Adjustment Board (45 U.S.C. § 153 First) with jurisdiction over employee-grievance disputes.

**3.** Article 28 of the Union Constitution provides:

No officer, member, or subordinate body of the United Transportation Union shall resort to the civil courts to correct or redress any alleged grievance or wrong, or to secure any alleged rights from or against any officer, member, subordinate body, or the United Transportation Union until such officer, member, or subordinate body shall have first exhausted all remedy by appeal provided in this Constitution for the settlement and disposition of any such rights, grievances, or wrongs.

Any officer, member, or subordinate body of the United Transportation Union violating the provisions of this Article shall be subject to charges and trials as provided by this Constitution.

**4.** Other cases not requiring exhaustion are also distinguishable. In Jones v. Trans World Airlines, Inc., 495 F.2d 790 (2d Cir. 1974), the court held that the plaintiff-employees who were suing their collective bargaining agent (as well as their employer) were not limited to their internal union remedies, but there one of the employees was *told* by a union official that pursuit of such remedies would be futile. 495 F.2d at 796 .n.9. In Schum v. South Buffalo Ry., 496 F.2d 328 (2d Cir. 1974), the court in remanding the case held that the plaintiff-employee would be excused from not exhausting his contractual remedies if he could show that he reasonably relied on his union to process his grievance administratively, and the union failed to take the proper action within the necessary time limits. Finally, in Cunningham v. Erie R.R., 358 F.2d 640 (2d Cir. 1966), the employee was excused from not demanding a company hearing on his charges of discrimination (and thus was excused from not exhausting administrative remedies) because he had good reason to think that the hearing was to be held solely on the subject of his non-payment of union dues; since he knew he had in fact not paid the dues, there was no point in his view in demanding a hearing.

ful in his arbitration proceeding the matter will be mooted.

 We do not find it necessary to reach the *statutory* exhaustion question because we think the procedural due-process issue to be without substance. The procedures involved here are within the standards for dismissal of government employees [5] recently set forth by the Supreme Court in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). For example, the system of automatic and increasing penalties for successive run failures provides ample notice to employees of eventual discharge for a fifth violation. Prior to permanent discharge, an employee may request and receive a formal hearing; after removal, the discharged employee receives a hearing with an impartial AAA arbitrator, before whom the evidence is not limited to that received at any earlier hearing. If the discharged employee is eventually found non-culpable, he is reinstated with full back pay and seniority. These procedural safeguards actually exceed the ones mandated by *Arnett*, rendering plaintiff's due-process claim meritless.

Moreover, the letter agreements here provided new benefits for union members, who, for example, previously could have been fired for only one run failure, whereas now the sanctions are specific and gradated. This recalls Mr. Justice Rehnquist's remark in *Arnett, supra*, "that where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant . . . must take the bitter with the sweet." 416 U.S. at 153–54, 94 S.Ct. at 1644.

One final point remains. On the application of the plaintiff, the state court on May 20, 1974 had signed an order to show cause for a preliminary injunction which stayed "any disciplinary action presently pending against the plaintiff." On June 1st, 1974 Mills was dismissed because of an alleged fifth run failure which supposedly occurred on May 31. The court below did not find the Rail Road in contempt since, *inter alia*, Mills might be successful in his arbitration proceedings concerning the third and fourth run failures, which in turn would vitiate the dismissal for the fifth infraction. In any event, the appeal here was taken to challenge "so much of the final judgment . . . as directs judgment dismissing the complaint." The contempt question is thus not before us, Terkildsen v. Waters, 481 F.2d 201, 205–06 (2d Cir. 1973).

Affirmed.

---

**5.** We think it appropriate to discuss the standards for government employees. Note that all the stock of the Long Island Rail Road is owned by the Metropolitan Transit Authority, a public-benefit corporation of New York State, pursuant to N.Y. Public Authorities Law

§ 1266 (McKinney's Consol.Laws, c. 43–A, 1970). See also Long Island Rail Road v. Public Serv. Comm'n, 30 A.D.2d 409, 292 N.Y.S.2d 167 (2d Dep't 1968), aff'd on the opinion below, 23 N.Y.2d 852, 298 N.Y.S.2d 65, 245 N.E.2d 799 (1969).