J. B. GOCLOWSKI, B. S. Spiridigliozzi, K. J. Magnus, R. D. Lane, E. Del Baggio, B. Spiridigliozzi, J. M. Leighty, A. G. Dannaway, W. C. Hamilton, L. G. Myers, F. R. Wallace, G. D. Labriola, and John N. Dumbeck, W. H. Moore, and G. F. Colyer, Appellants,

v.

PENN CENTRAL TRANSPORTATION COMPANY, Transport Workers Union of America, AFL–CIO, Transport Workers Union of America, AFL–CIO, Local 2017, B. E. Porta and E. V. Atreed, Appellees.

No. 77–1248.

United States Court of Appeals, Third Circuit.

Argued Oct. 21, 1977.

Decided Dec. 30, 1977.

As Amended May 31, 1978.

T. Dean Lower, Hollidaysburg, Pa., for appellants.

Hermon M. Wells, David A. McCormick, Philadelphia, Pa., for Penn Central Transp. Co.

Michael Klein, O'Donnell & Schwartz, New York City, for Transport Workers Union of America, AFL–CIO, and E. V. Atreed, appellees.

Richard D. Gilardi, Gilardi & Cooper, Pittsburgh, Pa., for Transport Workers Union of America, AFL–CIO, Local 2107 and B. E. Porta, appellees.

Before ROSENN and VAN DUSEN, Circuit Judges, and STERN, District Judge.*

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal brings into focus critical questions concerning the boundaries of federal court power to intercede in disputes between railroad employees, their union, and their employer. We must decide the extent of district court jurisdiction to hear employee challenges to the validity of an agreement entered into by a union and a railroad employer affecting the seniority of certain employees. Additionally, we must also once again examine the multiple rules concerning the statutory duty of fair representation.

This is a lawsuit filed by thirteen individuals who worked as railroad employees ("plaintiffs") against their union, the Transport Workers Union of America[1] (collec-

---

* Herbert J. Stern, United States District Judge for the District of New Jersey, sitting by designation.

1. Also joined as individual defendants are B. E. Porta, President of Local 2017 of the Transport Workers Union of America and E. V. Atreed, Vice President-Director of the International Union.

tively referred to as "Union"), and their employer, the Penn Central Transportation Company ("Railroad"). Plaintiffs claim that an agreement between the defendants executed in the face of their basic collective bargaining contract adversely affected their seniority rights. They seek to have that agreement declared invalid, either because it was an impermissible extension of other existing collective bargaining contracts between the defendants or because the Union was not authorized to bind the employees to such a contract in the absence of obtaining employee ratification. Plaintiffs appear to be seeking damages (1) from their Union for breach of the duty of fair representation and (2) from their employer for breach of contract.

On the motion of defendants, the district court granted summary judgment in full for both the Railroad and the Union. We find that the district court was only partially correct in its judgment; we affirm in part and reverse in part.

## I. THE FACTS

This is an appeal from a grant of summary judgment in favor of defendants by the United States District Court for the Western District of Pennsylvania. We have held that appellate review of grants of summary judgment requires that the facts be viewed in the light most favorable to the non-moving party. *Braden v. University of Pittsburgh*, 552 F.2d 948, 955 n. 35 (3d Cir. 1977); *see* C. Wright & A. Miller, *Federal Practice & Procedure*, §§ 2725, 2727 (1973). The following facts construed most favorably to plaintiffs may be drawn from the pleadings and affidavits before the district court.

Prior to November 13, 1972, the plaintiffs were carmen employees of the Union. They were listed on the roles of the Railroad's Eastbound Seniority District and worked at the Railroad's Eastbound Repair Shop doing day-to-day carmen work. Their seniority was established according to tenure in that shop within that district.

Sometime prior to November 1, 1972, the Railroad and the Union agreed to change the status of the Eastbound Repair Shop at Altoona, Pennsylvania by transferring its day-to-day repair work to the Westbound Repair Shop and by utilizing the Eastbound facility for programmed car repair work, under the jurisdiction of the Altoona Heavy Repair Shop. As a result of this agreement, employees of the Eastbound Repair Shop, including plaintiffs, would cease to be listed in the Eastbound Seniority District and would have their seniority determined by reference to whatever facility they were transferred. This agreement apparently was a product of mutual understanding between the Railroad and Union. No formal request to negotiate it was ever requested by either signatory as is generally required for major contracts under the Railway Labor Act, 45 U.S.C. § 151 et seq. (1970).

Plaintiffs were not informed until October of 1972 that any change in their seniority status was contemplated. They claim that when such agreements had been proposed on earlier occasions, the custom generally had been to allow employees to participate in the negotiations. An affidavit of John Horon, a former official and international representative of the Union, was filed by plaintiffs which stated that all similar contracts were submitted to the employees for comment and ratification. Defendants countered with an affidavit of Joseph Hanaberry, an officer of the International Union, denying that allegation. In October of 1972, the Railroad listed the positions to be abolished and to be readvertised as a consequence of the proposed agreement. At this time, plaintiffs complained to the Local Union and its officials about the proposed change.

On November 1, 1972, the Railroad posted the following notice for the employees containing the content of the agreement which has become the subject of this litigation:

WHEREAS, the Company, on November 13, 1972, will close the Allegheny Division car repair facility at the Eastbound Car Shop, Altoona and transfer the day-to-day repair work to the Westbound Shop; and

WHEREAS, this action will result in a surplus of approximately 20 carmen in the involved seniority roster; and

WHEREAS, the Company, on or after November 13, 1972, intends to utilize the said Eastbound Repair facility for programmed car repair work under the jurisdiction of the Altoona Heavy Repair Shops.

THEREFORE, IT IS AGREED:

1. On November 13, 1972, the 20 surplus carmen will be transferred into the Altoona Heavy Repair Shop Seniority District in accordance with the Implementing Agreement of May 31, 1970.

2. Effective November 13, 1972, the territory of the former Eastbound Repair Shop will become part of the Altoona Heavy Repair Shop Seniority District.

This agreement, dated November 1, 1972, was signed by officers of both the Local and International Union and by officials of the Railroad. The affected membership did not ratify the agreement.

Originally, thirty-three carmen were listed on the seniority roster who would have been forced to transfer to the Altoona Heavy Repair Shop Seniority District as a consequence of the November 1 agreement ("November agreement"). However, thirteen, all of whom are plaintiffs in this case, exercised their contractual right to relinquish their seniority and jobs in the Eastbound Seniority District and, in lieu of transfer to the Altoona Heavy Repair Shop, to accept diminished seniority in the Westbound District.

Promptly following the transfer of employees from the Eastbound Seniority District, the Railroad reopened the Eastbound Repair Shop as part of the Altoona Heavy Repair Shop Seniority District. Plaintiffs were then listed on the roster of the Westbound District; they were replaced in the Eastbound Shop by other carmen employees and members of the Union. Plaintiffs allege that these new carmen employees do substantially the same work as plaintiffs had done. They claim that they had been replaced unnecessarily by other identically skilled workers and that they have suffered damage to protected rights, loss of advantageous seniority positions, and have been forced to accept less desirable working conditions.

■ After plaintiffs realized the impact of the November agreement, they reasserted their previous complaints with the Local. The Local Union officials told them that nothing could be done. Plaintiffs then entered into extensive discussions with the International Union, but officials of the International Union similarly informed them that nothing could be done. Plaintiffs were, however, advised to take an appeal with the Local—and told by the Local that no such appeal could be filed—as well as being advised that they could appeal through the mechanism provided in the International Constitution. Meanwhile, plaintiffs also protested to the Railroad, but were told that the agreement was valid and binding. They thereupon filed this equity lawsuit on March 19, 1973, in a Pennsylvania state court. Defendants successfully petitioned to have the case removed to the United States District Court for the Western District of Pennsylvania.[2] In addition,

**2.** Plaintiffs opposed removal and asked that the case be remanded to the state court. The district court held that the plaintiffs' claims arose under the Railway Labor Act, 45 U.S.C. § 151 et seq. (1970), and that subject matter jurisdiction existed under 28 U.S.C. § 1337 (1970), which provides that "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

The Supreme Court has held that the Railway Labor Act is an act of Congress regulating commerce and that subject matter jurisdiction for claims under the Act exists under section 1337. *Felter v. Southern Pacific Co.*, 359 U.S. 326, 79 S.Ct. 847, 3 L.Ed.2d 854 (1959). The district court held that all of plaintiffs' claims arose under the Act. Some question, however, now exists as to whether all of plaintiffs' claims state causes of action under the Act and whether we have jurisdiction.

Plaintiffs have asked for damages based on breach of contract and unfair representation. Claims of both types state causes of action arising under federal labor laws. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) (unfair repre-

some of the plaintiffs filed formal grievances, none of which proceeded beyond the filing stage.

The complaint stated various bases for relief. Damages were claimed, first, against the Union for conspiracy with the employer to unfairly represent the employees' interests, and second, against the employer for breach of the collective bargaining agreement. Plaintiffs claim that their transfer was a violation of the existing collective bargaining agreement and that they are in their new and less advantageous positions because of the improper actions of the Railroad.[3] The thrust of plaintiffs' action was to invalidate the November agreement and restore the status quo on either of two separate grounds: (1) that the contract was an impermissible extension of the previous agreements between the Union and the Employer;[4] and (2) that the contract was invalidly executed because of the failure of the Union to obtain ratification from the affected membership.[5]

▮▮ Defendants opposed plaintiffs' claims and in their motion for summary

---

sentation); *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972) (breach of contract). Plaintiffs also seek to invalidate the November contract on two separate grounds: (1) that past *collective bargaining agreements* negotiated between the defendants did not permit the November agreement, and (2) that the contract was defectively formed because of the failure to obtain ratification by the affected Union members.

The contractual impermissibility claim is primarily a request to interpret contracts entered pursuant to authority granted by the Railway Labor Act. Under *Slocum v. Delaware, Lehigh & Western R. R. Co.*, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950), such claims arise under the Act. However, the claim of invalidation based on failure to obtain the membership's ratification presents some difficulty. Although the Supreme Court has held that an attempt to invalidate a contract provision arises under the Act, *Felter v. Southern Pacific Co., supra*, that case involved a claim for invalidity based directly on language within the Railway Labor Act. The ratification argument in the instant case is based solely on principles of agency, *see* Part II, *infra*, which are matters of state contract law. We need not decide if such a claim arises under the Railway Labor Act, however, for even if it does not, the district court has pendent jurisdiction under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

3. Plaintiffs seek liquidated damages as provided by the Basic Collective Bargaining Agreement of 1970, Reg. No. 2–A–1(e), which provides that:

> Except as provided in Regulation 2–A–4 [which plaintiffs claim is inapplicable here], an employee moved from one position to another on the same shift, at the instance of Management, will receive an additional three (3) hours' pay at the straight time rate of the regular assignment for each day he is required to work on another position.

4. The cornerstone of the claim that the collective bargaining contracts in force between the

defendants interdict the November agreement rests on the contention that these contracts, which provided authority to transfer employees, *see* n. 7, *infra*, do not contain authorization to make the transfers at issue here. The defendants negotiated a number of contracts designed to allow the transfer of employees throughout the merged system as well as protect the rights of the transferred employees. The critical clause of these contracts is contained in the Merger Protective Agreement of 1964, § 1(b), which provides that:

> In consideration of the foregoing employe [sic] benefits *the Merged Company shall be entitled to transfer the work of the employes* [sic] protected hereunder throughout the merged or consolidated system and the labor organization will, subject to provisions contained . . . hereto . . ., enter into implementing agreements providing for the transfer and use of employes [sic] and allocation or rearrangement of forces *made necessary by changes for which protection is herein provided* and the employes [sic], their organization and the carrier will cooperate to that end.

(Emphasis supplied.)

Plaintiffs contend that the November agreement, *which in effect closed their shop and promptly reopened it with no change in the character of work undertaken*, is not "made necessary by changes" contemplated by the collective bargaining contracts. They claim that only bona fide changes made necessary by the merged system or actual closings were envisioned by the agreements.

5. Plaintiffs allege that the constitution of the Union requires that "[a]ny proposed agreement shall be subject to ratification by the members covered by such proposed agreement." Transport Workers Union Const., Art. XXV, Collective Bargaining & Contracts, § 2. Furthermore, they allege that other provisions of the constitution require the supremacy of the local union. Transport Workers Union Const., Art. XII, Structure, § 2 ("the supreme authority in the Local Union shall be the membership of the Local Union . . . .")

judgment claimed: that there was no dispute of material fact over the unfair representation claim; that the plaintiffs are required to exhaust their internal union remedies prior to suit; that the collective bargaining contracts permitted the November agreement; that ratification was not required; and that the question of validity of the November agreement was a "minor" dispute subject to the exclusive jurisdiction of the National Railroad Adjustment Board.[6]

The district court, in an opinion reported as *Goglowski v. Penn Central Transp. Co.*, 423 F.Supp. 901 (W.D.Pa.1976), granted summary judgment in favor of the Railroad for three reasons: (1) The Railroad was entitled to enter an agreement with the duly authorized bargaining agents of its employees. (2) No cause of action for unfair representation could be sustained against the employer. (3) Exclusive jurisdiction over the dispute was with the Railroad Adjustment Board. The court also granted summary judgment for the Union holding that plaintiffs' claims involving interpretation of the collective bargaining contracts were for the Board to decide and that the question of unfair representation was not properly before the court because the plaintiffs had failed to exhaust their internal union remedies. The district court also seemed to say that there was no factual dispute as to the unfair representation claim.

Because this is an appeal from a grant of summary judgment, we must decide only if there is a sufficient showing of an issue of material fact which if proven would allow judgment for plaintiffs. We conclude that there is. There are facts in dispute sufficient to make out a claim for unfair representation against the Union and facts in dispute which may implicate the employer in that representation. There are also disputed facts, which would prove exhaustion or excuse from exhaustion of internal union remedies by plaintiffs. We believe the district court erred as well in holding that it was without jurisdiction to hear the claim that the November agreement was invalid for failure to obtain ratification. The court correctly ruled that questions pertaining to the validity and effect of the collective bargaining contracts were for the Board. We reverse in part and affirm in part.

## II. THE DISTRICT COURT HAS JURISDICTION OVER THE INVALIDATION CLAIM

The claim to invalidate the November agreement of necessity is based on the same facts on which the unfair representation claim rests. We therefore decide the question of the extent of district court jurisdiction over the invalidation claim preliminarily.

The plaintiffs contend the November agreement is invalid for two separate reasons: first, that the applicable collective bargaining agreements[7] between the Union

---

**6.** The Supreme Court has held that disputes between employees and railroad employers historically have fallen into two classes, "major" and "minor." Major disputes relate to disputes "over the formation of collective agreements or efforts to secure them. They arise when there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy." *Elgin, Joliet & Eastern R.R. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945); *Baker v. United Transp. Union*, 455 F.2d 149, 154 n. 11 (3d Cir. 1971). Minor disputes, however, "contemplates the existence of a collective agreement already concluded . . . . The dispute relates either to the meaning or proper application of a particular provision with reference to

a specific situation . . . ." 325 U.S. at 723, 65 S.Ct. at 1290; 455 F.2d at 154, n. 11.

The difference between the two disputes is critical in determining district court jurisdiction. If a dispute is minor, the district court is without jurisdiction, as exclusive jurisdiction is in the National Railroad Adjustment Board, *see Illinois Central R.R. Co. v. Brotherhood R.R. Trainmen*, 398 F.2d 973 (7th Cir. 1968); 45 U.S.C. § 153 First (i) (1970), whereas if a dispute is major, the court has power to enjoin changes to preserve the status quo, 45 U.S.C. § 156 (1970), and the claim is submitted for voluntary arbitration to the National Mediation Board.

**7.** The basic contracts between the Union and the employer bearing on the November agree-

and the employer do not permit the November agreement and second, that the November agreement was improperly executed because of the failure to obtain ratification from the affected Union membership.[8] The district court held that it was without jurisdiction to hear claims attacking the validity of the November agreement "[t]o the extent that the complaint against the Railroad avers a breach of the provisions of the collective bargaining agreements in effect between the parties . . . ." *Goglowski v. Penn Central Transp. Co., supra,* 423 F.Supp. at 903. It held that jurisdiction over all such claims is primarily and exclusively with the National Railroad Adjustment Board, *see Andrews v. Louisville & Nashville R.R. Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Slocum v. Delaware, Lehigh & Western R.R. Co.,* 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950), under the terms of the Railway Labor Act, 45 U.S.C. § 153 First (i) (1970).[9]

The district court has correctly stated the law, but we believe it did not properly interpret plaintiffs' complaint and Rule 56(e) affidavits which aver two separate invalidation claims. Consequently, it erroneously sent both claims to the Board. We assess the district court's opinion first as it relates to the invalidation claim based on contractual impermissibility and second, as it relates to the failure to obtain ratification.

■ Plaintiffs' contractual impermissibility claim asserts that the November agreement was an unauthorized extension of the collective bargaining agreements pertaining to seniority.[10] The defendants counter that the prior agreements between them confer authority to enter into the November agreement and that this dispute is clearly a minor dispute; that is, one which "involves the interpretation or application of a collective agreement." *Baker v. United Transp. Union,* 455 F.2d 149, 154 n. 11 (3d Cir. 1971).[11] As such, they claim it is subject to binding interpretation by the Railroad Adjustment Board. *Id.*

■ We agree with the district court that this part of the invalidation claim is for the Board. No doubt may be entertained that this claim requires close examination of the pertinent collective bargaining agreements between the Union and the Railroad. We defer to the expertise of the Board in construing railroad labor contracts. *See REA Express, Inc. v. Brotherhood Ry., Steamship, & Airline Clerks,* 459 F.2d 226, 231 (5th Cir. 1972); *United Transp. Union v. Burlington Northern, Inc.,* 458 F.2d 354, 357 (8th Cir. 1972); *Slagley v. Illinois Central R.R. Co.,* 397 F.2d 546 (7th Cir. 1968); *Chicago, M., St. Paul & P. R.R. Co.,* 397 F.2d 541 (7th Cir. 1968), *cert. denied,* 393 U.S. 1022, 89 S.Ct. 630, 21 L.Ed.2d

---

ment are: (1) the Merger Protective Agreement of 1964; (2) the Implementing Agreement of 1970; and (3) the Basic Collective Bargaining Agreement of 1970. For a discussion of the thrust of plaintiffs' arguments for invalidation based on these provisions, *see* n. 4, *supra.*

8. *See* n. 5, *supra.*

9. 45 U.S.C. § 153 First (i) (1970) provides in pertinent part that:

disputes between an employee or group of employees and carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, . . . shall be handled in the usual manner up to and including the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes

may be referred . . . to the . . . Adjustment Board

 . . . . .

10. *See* n. 4, *supra.*

11. Clearly, this is not a major dispute, one which arises "out of the formation or change of collective agreements covering rates of pay, rules, or working conditions." *Baker v. United Transp. Union, supra,* 455 F.2d at 154 n. 11. The Union and the employer assert that the past agreements provide a basis for the extension. Thus, the November agreement may arguably be justified by the existing collective bargaining contracts. Under the rule of this circuit, if the argument that a provision is supported by the collective bargaining agreement is not insubstantial, the dispute is minor. *United Transp. Union v. Penn Central Transp. Co., supra,* 505 F.2d at 544–45.

566 (1969).[12] That the Union is joined as a defendant does not alter the basis of the claim which primarily involves contractual interpretation. *Roberts v. Lehigh & New England Ry. Co.*, 323 F.2d 219, 222 (3d Cir. 1963).[13] The claim that the November agreement is invalid for failure to obtain ratification by the affected union membership stands on substantially different footing. The district court in essence regarded this claim only in connection with plaintiffs' effort to establish union liability under the unfair representation claim. The court held that the employer was justified in relying on the Union's apparent authority to negotiate the November agreement and that the Union's liability to its members for failure to obtain ratification could not be imputed to the Railroad. We believe that this is error, for under principles of agency, one party to a contract may not rely on an agent's authority to enter into it on behalf of his principal, when the party has knowledge of limitations placed on that grant by the agent's principal. As we later develop, the employer may be implicated in the Union's failure to obtain ratification,[14] and the ratification claim is an independent basis for attack on the November agreement.

■ Essentially, the claim that the November agreement is invalid for failure to obtain ratification involves a simple contractual principle attacking the formation of a contract. The law applicable to such a claim is ordinary common law. Thus, it appears that no interpretation of any provision of any collective bargaining agreement is called into question and that the Board's expertise need not be invoked.

As in *Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), this is essentially a suit brought by employees against their own union which does not call for judicial interpretation of the terms of a collective bargaining agreement. 393 U.S. at 328, 89 S.Ct. 548. This case is similar to *Felter v. Southern Pacific Co.*, 359 U.S. 326, 79 S.Ct. 847, 3 L.Ed.2d 854 (1959), in which the Supreme Court held that an employee challenge to the validity of an agreement negotiated by the railroad and a union was for the courts, because "no question of interpretation or application of the collective agreement" was raised. 359 U.S. at 327 n. 3, 79 S.Ct. at 850. Similarly, when employees challenged a provision of their collective bargaining agreement as invalid because of its permanent duration, the Second Circuit held that the courts had jurisdiction to enjoin the clause's enforcement and decide the question of its legality. *Seaboard World Airlines, Inc. v. Transport Workers Union*, 425 F.2d 1086, 1091 (2d Cir. 1970) (Friendly, J.) ("the question of the legality of the long prohibition . . . should be determined in the first instance by the district court.").

■ This circuit has not previously faced the question of whether the district court has jurisdiction over a claim challenging the validity of the formation of the railway labor contract. In *Roberts v. Lehigh & New England Ry. Co.*, supra, however, a case in which we sent plaintiff's claims to the Board, we stated that a "Federal district court *has jurisdiction to determine the validity of a contract* under the guarantees of the Act." 323 F.2d at 222 (emphasis supplied). Following that line, we hold that when employees challenge a contract between their union and their employer on the basis that it was invalidly executed, and no interpretation of the basic collective bargaining agreement between them is implicated, the district court has

---

12. The plaintiffs' damage claim for breach of contract, n. 5, *supra*, is likewise for the Board.

13. Plaintiffs cite *Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), for the proposition that a lawsuit filed by employees against both their union and their employer does not fall within the Board's exclusive jurisdiction under the terms of 45 U.S.C. § 153 First (i) (1970) ("dis-

putes between an employee or group of employees and carrier or carriers"). We believe *Glover* is not applicable when the basis of the claim is primarily construction and interpretation of existing collective bargaining agreements.

14. *See* Part IIIB, *infra*.

jurisdiction over the claim [15] and we should not defer to the exclusive jurisdiction of the Board.[16]

## III. A FACTUAL ISSUE EXISTS WHICH PRECLUDES SUMMARY JUDGMENT

In Part II of this opinion we held that the district court has jurisdiction to decide if the November agreement is invalid because of the failure to obtain ratification. The factual basis for the lack of ratification is also the fundament of the unfair representation charge against the Union. We therefore analyze the representation claim with an eye to the factual controversy underlying the claim that the November agreement was not validly executed.

Plaintiffs assert that the employer and the Union have conspired to unfairly represent employee interests by entering into the November agreement. This claim rests on the following allegations which are supported by the affidavits filed under Rule 56(e): (1) The notice posted on November 1, 1972, was false and misleading because it stated that the Eastbound Repair Shop would be closed, when in fact it was reopened with more activity and more employees than previously. (2) Other employees with identical skills to those of plaintiffs took plaintiffs' jobs and are discharging the same duties for the Railroad. (3) The plaintiffs were not consulted as to the formation of the November agreement and were never asked to ratify it. (4) The Union violated its constitution which required ratification. (5) All of the defendants knew that similar agreements were submitted to the local membership in 1968 and again in 1969 and were rejected by them. (6) On other occasions, proposed contracts such as the November agreement were always submitted to the local membership for ratification. (7) After the contract was signed, the Union refused to consider the plaintiffs' request to invalidate the agreement. (8) Defendants refused to advise plaintiffs which sections of the collective bargaining contracts authorized the November agreement. (9) The Railroad knew of the Union's violation of its constitution, but did nothing to prevent Union unfair representation. (10) As a result of unfair representation by the Union and the complicity of the employer, plaintiffs now work at a new location with less desirable working conditions and diminished seniority rights.

The district court granted summary judgment in favor of both defendants on this issue, holding: that the plaintiffs' failure to exhaust internal union remedies precluded the court from reaching the unfair representation claim; that the Railroad could justifiably rely on the duly designated representatives of the employees to make the November agreement binding and that the Union was authorized under the basic collective bargaining agreement in force to bind the employees. The district court also held that there was no material issue of fact as to the charge of unfair representation and that even if such a claim could be pursued against the Union, no cause of action would exist against the employer.

### A. The Plaintiffs Have Sufficiently Exhausted Their Internal Union Remedies

■ The primary basis for the district court's grant of summary judgment on the unfair representation charge is that the plaintiffs did not exhaust their internal union remedies. Exhaustion of internal union remedies is a necessary requirement to a complaint against a union for breach of the duty of fair representation. *Mills v. Long Island R.R. Co.*, 515 F.2d 181 (2d Cir. 1975); *Gainey v. Brotherhood of Ry. & Steamship Clerks*, 275 F.2d 342 (3d Cir. 1960).

---

**15.** The district court must still find subject matter jurisdiction over such a claim. *See* n. 2, *supra*.

**16.** We do not hold that plaintiffs have established the invalidity of the November agreement as a matter of law; we hold only that the district court has jurisdiction to hear the claim. As we later discuss, factual questions remain with respect to the ratification claim which preclude summary judgment and necessitate a trial. *See* Part III, *infra*.

Plaintiffs' claim for unfair representation is based primarily on charges against the Union both for its initial failure to obtain ratification and its subsequent failure to reconsider and remedy the situation. The district court held that the plaintiffs' failure to utilize the Union's internal appeals procedure [17] precluded it from hearing the claim. Plaintiffs concede that they did not formally comply with the appeals procedure provided by the Union's Constitution. Summary judgment, however, may not be granted on the ground of failure to exhaust remedies in the instant case, for sufficient facts have been set forth to prove either that plaintiffs have already done all that is possible within the Union appeal procedures or that they may be excused from pursuing Union remedies to exhaustion.

 Plaintiffs claim that they have done all that is possible to protest the Union's action, although they did not undertake formal compliance with the appeals procedure. *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790, 796 (2d Cir. 1974), holds that exhaustion of internal union remedies may be excused when such attempts would be futile. The plaintiffs repeatedly sought redress for harms caused by the Union. They met with officials of the International and the Local, asking the officials to rescind the November agreement. These attempts at relief were rebuffed in each instance. Under these circumstances, requiring plaintiffs to undertake a time-consuming formal appeal would serve no purpose. *See Glover v. St. Louis-San Francisco Ry. Co., supra,* 393 U.S. at 324, 89 S.Ct. 548. The exhaustion requirement is based on a policy of forcing employees to seek initial relief internally from their union without seeking external help from the courts. When, as here, the Union discloses that its position has become fixed, complaining union members are relieved from the frustrations of

futile appeals. Under these conditions, the policy favoring exhaustion is not undermined when the district court takes jurisdiction. We therefore conclude that union members are not foreclosed from judicial relief when the local and international officers notify the members that they are unwilling or unable to offer any relief. *See Brennan v. Local Union 122,* 564 F.2d 657 (3d Cir. 1977) (no need to attempt to change union by-laws as a remedy even though provided in agreement); *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870 (3d Cir. 1972) (Rosenn, J.) (no need to exhaust when the union has given grievance perfunctory consideration). In the instant case, there are sufficient factual disputes raised by the plaintiffs' complaint and Rule 56(e) affidavits to excuse them from the needless task of exhausting union remedies. Therefore, summary judgment may not be entered for the defendants.

### B. There Is Sufficient Factual Basis to Make Out an Unfair Representation Claim

The essence of plaintiffs' unfair representation claim is that the defendants' November agreement was invalid and that defendants, with knowledge of its invalidity, sought to enforce its provisions. The district court held that the Union had authority to negotiate the contract and that the employer could rely on the Union's authority. Because of this, the district court believed that there was no basis for a charge of unfair representation. The court indicated that the facts alleged in the complaint and supporting affidavits were insufficient to state a cause of action for unfair representation. We first assess the court's treatment of the facial validity of the November agreement, as this is the crux of the unfair representation claim. We then assess its evaluation of whether the complaint

---

17. The Transport Workers Union Constitution, Art. XXIII, Appeals, § 2 states that:

Any member in good standing may appeal to the International Union (a) from any action or decision of his local union which adversely affects his interests as a union member or as an employee and which he believes to be in

violation of this constitution or of the by-laws of his Local Union; or (b) from any decision of his local union pursuant to Article XX or Article XXI of this Constitution; or (c) from any other act or decision which, under this Constitution or his Local by-laws is subject to appeal to the International Union.

and the supporting affidavits state a cause of action for unfair representation. Preliminary to this, however, we must first address that part of the district court's opinion which holds that the employer may not be implicated in an unfair representation suit.

■ The district court held that even if a cause of action could be established for breach of the duty of fair representation, no such cause could lie against the employer. We are constrained to disagree. While it is true that the claim is directed primarily against the Union, the employer is also charged with entering into the agreement with knowledge of the Union's lack of authority. This may constitute a sufficient basis to join the employer in an unfair representation claim. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) (employer implicated in dismissal of employees based on false allegations); *Glover v. St. Louis-San Francisco Ry. Co., supra* (case involving charges that the union unfairly represented its black members, employer retained as a defendant).

[I]n a suit against a union for "hostile discrimination" the employer can be joined as a party defendant if it "acted from a motive to discriminate or with knowledge that the [union] was discriminating." [*Ferro v. Railway Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)]. Where the employer's action is only a consequence of the union's discriminatory conduct, e. g., *Cunningham v. Erie Railroad Co.*, 266 F.2d 411 (2d Cir. 1959), or takes the form of joint discrimination with the union, then plaintiffs should be allowed to join the employer and union in one action. *Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (U. S. Jan. 14, 1969).

*O'Mara v. Erie Lackawanna R.R. Co.*, 407 F.2d 674, 679 (2d Cir. 1969), *aff'd sub nom., Czosek v. O'Mara*, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970).

Plaintiffs' complaint and supporting affidavits are replete with allegations and statements of facts which link the employer's action inextricably with that of the Union. The employer is charged by plaintiffs with knowledge of the ratification requirement which is the basis for the unfair representation claim. Although the employer denies this, sufficient factual dispute exists to render impermissible a summary judgment for the Railroad in the unfair representation claim.

■ It is a basic principle of labor law that the employer is required to deal and enter into contracts with the duly designated bargaining representatives of its employees. *Virginia Ry. Co. v. System Federation No. 40*, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937). The duly designated representative of railroad employees has statutory authority under the Railway Labor Act to make agreements binding upon them with respect to wages, rules, and other working conditions. *Elgin, Joliet & Eastern R.R. Co. v. Burley*, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). In *Kline v. Florida Airlines, Inc.*, 496 F.2d 919 (5th Cir. 1974), the unilateral failure of a union to follow its own rules was an insufficient basis to invalidate the agreements entered into by the union with the employer.

■ But, an employer has no right to rely on the appearance of authority of the bargaining agent if it has knowledge to the contrary. This is an elementary principle of the law of agency. *See O'Mara v. Erie Lackawanna R.R. Co., supra*, 407 F.2d at 679. The plaintiffs' allegations and supporting affidavits are laden with facts indicating that the Railroad had notice as to the requirement for ratification of agreements such as that contested here, but without objection actively participated in the execution of the November agreement. We conclude that a substantial factual question exists here as to whether the agreement itself is invalid for failure to obtain ratification.

■ The district court asserts that Rule 3–b–2 of the Basic Collective Bargaining Agreement of 1970 gave authority to the Union to negotiate the November agree-

ment, consequently validating the Union's and employer's action. Rule 3–b–2 provides that:

> No changes or modifications shall be made in existing seniority districts of a craft or class, nor shall any roster be combined or divided unless otherwise agreed to, in writing, between the Director-Labor Relations [for the Railroad] and the Director of Railroad Division [for the Union].

This clause does no more than establish the procedure for undertaking a change in seniority rights. It is subject, as are all other authorizations of power to an agent, to the limitations placed on the power by the principal. A factual question exists here as to whether the plaintiffs' bargaining agent is empowered to bind the employees in the absence of ratification. Therefore, Rule 3–b–2 is subject to whatever agency limitations are found in the arrangement between the employees and the union officials and cannot be a bar to the cause of action for unfair representation. Because plaintiffs have supplied affidavits in support of their allegations that the employer was on notice as to these limitations, the employer may not rely on the apparent authority of the bargaining agent.

■ Facts are alleged which if proved would allow the plaintiffs to establish that the Union had no authority to enter into the November agreement and that the employer was aware of this contractual disability. The question we must answer is whether proof of these facts is sufficient to establish a cause of action against both defendants for unfair representation.

The district court characterized plaintiffs' charge of unfair representation as insufficient in raising "issues of hostility or partiality on the part of the union officers." *Goglowski v. Penn Central Transp. Co., supra,* 423 F.Supp. at 906. It held that the plaintiffs alleged nothing more than a "disagreement with the interpretation placed upon its Constitution by the Union officers" which "cannot rise to the dignity of unfair representation." *Id.* at 905. We disagree. We believe that plaintiffs' complaint and

affidavits create an issue of fact sufficient to withstand summary judgment.

■ The statutory duty of fair representation was developed in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act. *See Tunstall v. Brotherhood Loc. Firemen,* 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944); *Steele v. Louisville & Nashville R.R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). It is now clear that unfair representation claims may be brought for any hostile discriminatory union representation, even those not racially based. *See Hines v. Anchor Motor Freight, Inc., supra.* "A breach of the statutory duty of fair representation occurs . . . when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).

Plaintiffs have set forth far more than a mere disagreement with Union officials over the meaning of the Union's constitution. An affidavit was filed for plaintiffs by John Horon, a member and officer of the defendant Local Union and representative to the International Union from 1955 through 1973, who participated in contract negotiations for eighteen years. He averred that every agreement between the Local and the Railroad and every agreement between the International and the Railroad between 1955 and 1973 was submitted to the local membership for approval. He further averred that agreements similar to the November agreement had been submitted and rejected by the employees in 1968 and 1969. Defendants filed an affidavit by Joseph Hanaberry, an officer of the International Union, who stated his belief that the Union Constitution did not require ratification. This, however, does nothing more than to establish a contested question of fact for the court.

■ The district court held that this prior history of negotiations did not create an issue of fact as to whether the Novem-

ber agreement was a product of unfair representation. We disagree. The existence of prior negotiations points to the unusual nature of the November agreement. When coupled with the contested allegations concerning substitutions of other employees to replace plaintiffs at the same job and the Union's refusal to reassess the November agreement, an inference may be raised as to the Union's intentions. Thus, substantial questions of fact exist which require trial.[18]

## IV. CONCLUSION

(1) The plaintiffs' claim that existing collective bargaining contracts did not permit the November agreement is a minor dispute not properly before a federal court. Exclusive jurisdiction is with the National Railroad Adjustment Board. Therefore, the district court properly held that it had no jurisdiction of this claim against the Union and the Railroad.

(2) The plaintiffs' claim for damages based on a breach of the basic collective bargaining agreements is a minor dispute not properly before a federal court. Exclusive jurisdiction is with the National Railroad Adjustment Board. Therefore, the district court properly held that it had no jurisdiction of this claim against the Railroad.

(3) The plaintiffs' claim to invalidate the November agreement because of the failure of the Union to obtain ratification is properly before the district court. Summary judgment for defendants is inappropriate; factual issues are presented as to the meaning of the Union constitution, the history of past negotiations, and whether the November agreement is subject to past practices. The district court has jurisdiction of this claim and we will reverse the entry of summary judgment in favor of both defendants.

(4) The plaintiffs' unfair representation claim should not have been dismissed by summary judgment. Factual issues exist as to exhaustion of remedies, past negotiations of contracts, and refusal to reconsider the validity of the November agreement. The entry of summary judgment in favor of both defendants will be reversed.

(5) Plaintiffs' claim that the existing collective bargaining contracts did not permit the November agreement [(1) above] and plaintiffs' claim for damages based on breach of the basic collective bargaining agreements [(2) above] can be heard only by the National Railroad Adjustment Board. Plaintiffs' claim to invalidate the November agreement because of the failure of the Union to obtain ratification [(3) above] and plaintiffs' unfair representation claim [(4) above] are remanded to the district court for action not inconsistent with this opinion.[19]

The judgment of the district court granting defendants' motions for summary judgment will be affirmed in part and reversed in part.

18. We hold in this opinion that the plaintiffs' causes of action are to be split—the unfair representation claim and the ratification claim are for the district court and the contractual impermissibility claim is for the Board. Although the unfair representation and ratification claims are directed primarily at the Union, the employer is implicated as well. Under *Hines v. Anchor Motor Freight, Inc., supra* the Supreme Court has held that the employer may be a necessary party to an unfair representation claim. On the facts of the instant case, the Railroad's collusion with the Union, if proved, would amount to an undermining of the basic collective bargaining agreements. Therefore, the district court has subject matter jurisdiction over both the Union and the Railroad on the unfair representation claim and has jurisdiction over both the Union and the Railroad as to the ratification claim as well, under the doctrine of pendent jurisdiction. *See* n. 2, *supra.*

19. The district court may consider staying any action on those claims until final resolution of the contractual claims within the exclusive jurisdiction of the National Railroad Adjustment Board in accordance with the principles stated in our decision in *Laveson v. Trans World Airlines*, 471 F.2d 76, 79 (3d Cir. 1972).