**BILLIE DAVENPORT, et al., Plaintiffs,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL–CIO, et al., Defendants.**

**No. CIV. A. 97–1954 JR.**

United States District Court, District of Columbia.

Oct. 3, 1997.

Arthur L. Fox, II, Lobel, Novins & Lamont, Washington, DC, Barbara Harvey, Detroit, MI, for Plaintiffs.

Daniel B. Edelman, Yablonski, Both & Edelman, Washington, DC, Betty Grdina, Associate General Counsel, International Broth. of Teamsters, Washington, DC, for the International Broth. of Teamsters.

John J. Gallagher, Neal D. Mollen, Paul, Hastings, Janofsky & Walker, Washington, DC, for Northwest Airlines.

Denis F. Gordon, Frank Petramalo, Jr., Gordon & Barnett, Washington, DC, Frederick Perillo, Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, Milwaukee, WI, for Defendant Local 2000.

## MEMORANDUM ORDER

ROBERTSON, District Judge.

The plaintiffs in this case, all members or representatives of International Brotherhood of Teamsters Local 2000, move for a preliminary injunction to restrain Northwest Airlines, Inc. from implementing a temporary labor agreement dealing with work hours. For the reasons stated below, plaintiffs' motion [# 3] is **denied**.

### Facts

Seven of the eight plaintiffs in this case are flight attendants employed by Northwest Airlines and members or representatives of Local 2000.[1] Pltf.'s Supp. Brief at 3. The injunction they seek would prevent Northwest Airlines from implementing a temporary labor agreement ("Bridge Agreement") that was agreed to by Local 2000's union representative but never submitted to the membership for ratification. While the preliminary relief plaintiffs seek would run only against the airline, the underlying action recites claims against Local 2000 and the International Brotherhood of Teamsters ("IBT") as well. Plaintiffs assert: (1) a claim against Local 2000 and the IBT under § 301 of the Labor–Management Relations Act, 29 U.S.C. § 185 (1996), for violation of the membership's right under the union's constitution to ratify contract modifications; (2) a claim

against Local 2000 and the IBT for breach of the equal voting rights provision in § 101 of the Labor–Management Reporting & Disclosure Act, 29 U.S.C. § 411(a)(1); and (3) a claim against Local 2000, the IBT, and Northwest Airlines for breach of the duty of fair representation. Pltf.'s Compl. ¶¶ 33–37.

Northwest Airlines and Local 2000 entered into their most recent three-year collective bargaining agreement on August 1, 1993. It is still in effect pending ongoing negotiations. Section 5.A.3 of the agreement governs the number of hours a flight attendant can work in a shift (duty time) as well as the number of hours a flight attendant can fly within a given period of time (flight time). It begins as follows:

> Current Federal Air Regulations as described in paragraphs 3.a through e., below, shall apply to all Flight Attendants for daily and weekly limitations. Any changes or modifications in the Federal Air Regulations shall also be applied to Flight Attendants.

Changes to the Federal Air Regulations (FAR's) were subsequently made, effective March 1, 1996, that for the first time regulated the hours of flight attendants. Under the FAR's, airlines are permitted to assign flight attendants *duty times* of 14 to 20 hours, 14 C.F.R. 121.467, whereas the collective bargaining agreement limited their duty time to a maximum of 14, Northwest Airlines Flight Attendants Agreement § 5.A.4 ("Agreement"). Additionally, the FAR's do not limit *flight time*, while the contract limits flight time, to eight hours in 24 hours and 30 hours in seven days. Agreement § 5.A.3(b) & (d).

After the FAA's adoption of the new duty time and flight time regulations, Northwest Airlines asserted to Local 2000 president Ron Retrum that § 5.A.3 (quoted above) entitled Northwest to abrogate the flight time limitations set forth in the contract. Retrum disagreed, but he subsequently negotiated for an agreement with Northwest Airlines (the Bridge Agreement) that Northwest could override the 8–in–24 contract flight time limitation when the flight sequence be-

---

1. The eighth plaintiff is not a flight attendant but a union employee.

gins and ends at the flight attendant's home base and does not involve more than three separate flight segments (two in instances involving "red-eye" flights). The Bridge Agreement also provides that Northwest will pay flight attendants at the higher international flight rates in certain instances involving longer flight times and duty times. Bridge Agreement Letter at 11–13, amending Agreement at § 5.A.3(d) & § 5.C.2.

Some members of the Local 2000 objected to handling the issue by way of the unratified Bridge Agreement and appealed to IBT President Ron Carey. In his response letter, Northwest Airlines Opp. Brief to T.R.O. Ex. 25, Carey noted that Local 2000's Executive Board had decided that settlement of the dispute was the best option, but he advised that Local 2000 should receive "membership input" and emphasized that the Bridge Agreement was a temporary agreement and not a permanent interpretation of the language of the 1993 Agreement. *Id.* Carey did not address the subject of membership ratification.

Plaintiffs then sent written notice to all defendants in the present action that the Bridge Agreement was unenforceable because it had not been ratified as required by the IBT constitution. After negotiations, IBT has agreed to conduct a secret mail ballot referendum of Local 2000 members on the Bridge Agreement. The referendum will be taken between November 10 and December 10, 1997. Northwest Airlines has stated its intent to implement the agreement without awaiting the result of the referendum and has not committed to be bound by the result.

### Analysis

Plaintiff's motion fails on the first prong of the four-part test for preliminary injunction, likelihood of success on the merits. *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958).

■ The first two causes of action set forth in plaintiff's complaint, under § 301 of the LMRA and § 101 of the LMRDA, do not lie against Northwest Airlines. Northwest is a common air carrier. Its collective bargaining agreements with its unions are therefore governed by the Railway Labor Act, 45 U.S.C. § 181 *et seq.,* and Section 301 of the LMRA expressly excludes from its coverage "any matter which is subject to the provisions of the Railway Labor Act." 29 U.S.C. § 182 (1996); *see also Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 376–77, 89 S.Ct. 1109, 1114–15, 22 L.Ed.2d 344 (1969); *Fechtelkotter v. Air Line Pilots Ass'n,* 693 F.2d 899, 903 (9th Cir.1982); *Raus v. Brotherhood Ry. Carmen,* 663 F.2d 791 (8th Cir.1981). As for § 101 of the LMRDA, it governs only the rights of union members against unions. It "imposes no obligation on employers and creates no cause of action against them." *American Postal Workers Local 6885 v. American Postal Workers,* 665 F.2d 1096, 1109 n. 26 (D.C.Cir.1981) (citations omitted) (*Local 6885* ); *see also Hayes v. Consolidated Service Corp. et. al.,* 517 F.2d 564 (1st Cir. 1975). Obviously, plaintiff has no chance of success on the merits of these claims against Northwest Airlines.

■ The duty of fair representation does in some limited circumstances give rise to a valid cause of action against an employer-defendant. An employer "may sometimes be joined in a suit involving duty of fair representation claims against a union, [when] an employer somehow [has] acted improperly and infringed the rights of the individual aggrieved employees"—for example, by knowingly violating a collective bargaining agreement. *Local 6885,* 665 F.2d at 1109. Alternatively, an employer who knowingly buckles to union pressure and discriminates against an employee can be held liable under a duty of fair representation theory if the employer had "actual notice of, or might reasonably be charged with notice of, the union's breach of duty to its members." *Id.*

■ Plaintiffs assert that the necessary scienter element can be found in Northwest Airline's involvement in past modifications of contractual flight time limitations that were submitted to membership vote—that Northwest "had knowledge of the ratification requirement" in the union constitution. Pltf.'s Brief at 21, Erskine Aff. ¶ 12. This argument misses the point that the duty of fair

representation creates no independent obligation that runs to the employer. The employer's independent duty is to bargain "in good faith," *Local 6885*, 665 F.2d at 1109. Northwest Airlines reached an interim settlement of its dispute with Local 2000 after negotiation. Plaintiff has made no showing that it can adduce any evidence of bad faith, let alone that it is likely to succeed on the merits of such a claim. Even the cases cited by plaintiffs require much more than plaintiff has presented on this record. *See. e.g., Walker v. Consolidated Freightways Inc.*, 930 F.2d 376, 381 (4th Cir.), *cert. denied*, 502 U.S. 1004, 112 S.Ct. 636, 637, 116 L.Ed.2d 654, 655 (1991) (finding an employer liable to a union for a knowing breach of the collective bargaining agreement); *Parker v. Teamsters Local 413, et. al.*, 501 F.Supp. 440 (S.D.Ohio 1980), *modified on appeal*, 657 F.2d 269 (6th Cir.1981).[2]

---

2. *Goclowski v. Penn Central Transportation Co.*, 571 F.2d. 747 (3rd Cir.1977) on which plaintiffs rely heavily, is distinguishable. In that case, the court found that for the purposes of denying employer-defendant's motion for summary judgment, there was evidence that the employer had knowingly implemented an unratified agreement that was an obvious alteration of the terms of the collective bargaining agreement. *Id.* at 751.