John F. **CSANADI**

v.

**TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS LOCAL UNION NO. 773 and Alfonso C. Abbruzzi, President.**

**Civ. A. No. 77–705.**

United States District Court, E. D. Pennsylvania.

Oct. 4, 1978.

Bernard V. O'Hare, Jr., Bethlehem, Pa., for plaintiff.

Stephen C. Richman, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Plaintiff John F. Csanadi ("Csanadi") brought this action against defendants Teamsters, Chauffeurs, Warehousemen and Helpers Local Union No. 773 ("Local Union") and Alfonso C. Abbruzzi ("Abbruzzi"), President of the Local Union, alleging that the Local Union had improperly denied Csanadi seniority benefits and had failed to perform its duty of fair representation by refusing to process Csanadi's grievance. The jurisdiction of this Court is invoked pursuant to section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1970). Presently before the Court are the defendants' motions for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated below, the defendants' motions will be granted.

The pleadings, depositions and affidavits in this case demonstrate that the pertinent facts underlying this dispute are as follows: Csanadi was an employee of the Branch Motor Express Company ("Branch") from 1953 to 1975, serving as a truck driver between 1953 and 1959. The terms and conditions of Csanadi's employment as a truck driver were governed by a series of collective bargaining agreements executed between Branch, his employer, and the Local Union, his exclusive representative for the unit of truck drivers and other specified

nonsupervisory personnel. In February of 1959, Csanadi left his position as a truck driver to become a dispatcher at Branch, a supervisory position not within the bargaining unit represented by the Local Union. At the time of his departure from the bargaining unit, Csanadi made no written agreement concerning his seniority benefits with either the Local Union or Branch.

Csanadi was subject to different terms and conditions of employment in his supervisory position as a dispatcher at Branch than he had been as a truck driver. As a dispatcher, he received an incentive bonus, attended management meetings and earned income on a salary basis. Over the years, however, Csanadi became dissatisfied with the monotonous nature of the dispatcher job and, in the late 1960's and early 1970's, repeatedly asked Branch to allow him to return to his former position of truck driver and to assign him to particular driving routes. After his requests to be reassigned to particular driving routes were denied by Branch, Csanadi wrote a letter dated September 11, 1975, and addressed to the Terminal Manager and Union Shop Steward of Branch and all officers of the Local Union, in which he submitted another bid for a specific driving route. On September 24, 1975, Branch held a meeting at its Allentown terminal to discuss Csanadi's letter. This meeting was attended by Csanadi, Branch Terminal Manager Anthony Cerciello ("Cerciello"), Branch Assistant Terminal Manager Ed Rohn, Branch Operations Manager Andrew Kraynik and Branch Regional Manager Clem Ziolkowski, but was not attended by any officials of the Local Union. During the meeting, Branch agreed to allow Csanadi to return to his position as truck driver, but limited his placement to the "extra board," not the "bid board."[1] On September 26, 1975, Cerciello wrote to Csanadi to confirm the agreement whereby

Csanadi would be "allowed to resign his supervisory position so that he could return to Union Represented Employment" as a truck driver, provided he could pass the necessary physical examination and driver's test required by Branch and the Pennsylvania Department of Transportation. A copy of Cerciello's letter was sent to Howard Hontz, Business Agent for the Local Union, who by letter dated September 29, 1975, advised Cerciello that the Local Union objected to any attempt by Branch to restore full seniority rights to Csanadi because of Csanadi's departure from the truck drivers' unit 16½ years earlier. Accordingly, Csanadi was allowed to return to the truck drivers' unit, but was placed at the bottom of their seniority list, thereby affecting his ability to successfully bid for the more favored "bid board" trucking routes.

Branch and the Local Union have been parties to a series of collective bargaining agreements which govern the terms and conditions of employment for those employees within the bargaining unit. In October of 1975, Branch and the Local Union submitted the question of Csanadi's seniority rights to the Central Pennsylvania Joint Area Grievance Committee ("Joint Area Committee") for an interpretive opinion, pursuant to Article 43 of the collective bargaining agreement then in effect.[2] On October 9, 1975, the Joint Area Committee, a panel comprised of representatives of the employers and local unions that are parties to the collective bargaining agreement, heard the case and rendered a decision which held that Csanadi had "not complied with the provisions of Article VII, paragraph (F), of the August 15, 1958—August 14, 1962 Central Pennsylvania Over-The-Road and Local Motor Freight Agreement and therefore lost his seniority rights when he became a supervisor for Branch Motor

---

1. The "bid board" is a list of bids for specific trips or runs that are assigned to specific drivers. The "extra board" is a list of drivers who were not assigned regular trips or runs, but who were assigned "extra" trips or runs as they became available. *See* Cerciello deposition at 99–100.

2. The collective bargaining agreement in effect for the period July 1, 1973, to March 31, 1976, was entitled the "NATIONAL MASTER FREIGHT AGREEMENT and Central Pennsylvania Over-The-Road and Local Cartage Supplemental Agreement."

Express Co. in 1959." [3] Branch and the Local Union subsequently advised Csanadi that he could return to the bargaining unit of truck drivers at Branch, but that he could not receive credit for the 16½ years he was not in the unit.[4] Although Csanadi complained about the union's actions to the shop steward at Branch, he did not file a written, formal grievance of union misrepresentation with the Executive Board of the Local Union, as required by the collective bargaining agreement. Further, Csanadi did not file an appeal with the General Executive Board of the International Union, as required by Article XIX of the Constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

■ To prevail upon a motion for summary judgment, the movant must conclusively demonstrate that there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Fed.R.Civ.P. 56(c). In this case, on the basis of the facts in the pleadings, depositions and affidavits, we find that the defendants have conclusively demonstrated that there is no genuine issue of material fact which must be preserved for trial. The issue, therefore, is whether the defendants are entitled to a judgment in their favor as a matter of law. The resolution of this issue depends upon a determination of the questions of: (1) whether the defendants improperly denied Csanadi seniority benefits when he returned to the truck drivers' collective bargaining unit; and, (2) whether the Local Union failed to perform its duty of fair representation by submitting the question of Csanadi's seniority to the Joint

Area Committee without his being present, or by refusing to process his grievance subsequent to the decision of the Joint Area Committee.

In support of their motions for summary judgment, Abbruzzi and the Local Union argue that Csanadi has failed to state a claim upon which relief can be granted because: (1) the decision of the Joint Area Committee interpreting the collective bargaining agreement and rejecting Csanadi's seniority claim is final and binding; and, (2) this Court lacks subject matter jurisdiction because Csanadi has failed to exhaust the internal union remedies available to him through the appeals procedure of the Constitution of the International Union. In the alternative, the defendants argue that they did not breach their duty of fair representation because, under the circumstances of this case, they properly and fairly represented Csanadi at all times. In response, Csanadi argues that he has stated claims upon which relief can be granted because: (1) the Joint Area Committee's decision is not final and binding as to him because Csanadi was not a party to the October 9, 1975, hearing; and, (2) Csanadi had no internal union remedies available because the Joint Area Committee had already decided the matter of his seniority against him and because the shop steward would not process his grievance subsequent to the Committee's decision. Accordingly, Csanadi argues that the defendants breached their duty of fair representation in the handling of his grievance regarding his seniority rights.

### Csanadi's Seniority

■ The question of whether Csanadi would be able to retain his seniority bene-

---

**3.** Article VII, paragraph (F), of the collective bargaining agreement in effect when Csanadi became a dispatcher provides:

The Local Union Representative and the Employer shall mutually agree, in writing, on circumstances under which persons who leave the classification of work covered by this Agreement, but remain in the employ of the Employer in some other capacity, may retain seniority rights upon their return to their original unit. In the absence of such

written agreement, such employee shall lose all seniority rights upon leaving.

**4.** In accordance with the Local Union's policy of not inviting individual employees to attend hearings concerning the uniform interpretation or application of the collective bargaining agreement, Csanadi did not attend the October 9, 1975, meeting of the Joint Area Committee. *See* Affidavit of Howard Hontz, dated October 18, 1977, at ¶ 6.

fits upon his return to the truck drivers' collective bargaining unit was submitted to the Joint Area Committee for an interpretive opinion, pursuant to the "Grievance and Arbitration" provisions, as outlined in Article 43, sections 1(g) and 2(f) of the National Master Freight Agreement in effect during October of 1975.[5] Article 43, section 2(g) of the same agreement provides:

> When any of the Committee referred to above, by majority vote, settled a dispute, such decision shall be final and binding on all parties with no further appeal.

It is well settled that the scope of judicial review of such decisions is a narrow one. *See Bieski v. Eastern Automobile Forwarding Co.,* 396 F.2d 32, 37 (3d Cir. 1968). A court will defer to the decision of a joint committee when it is exercising its delegated power to decide unresolved problems arising out of a collective bargaining agreement. *Price v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 457 F.2d 605, 610 (3d Cir. 1972). Specifically, where a decision is appropriately reserved for the judgment of the Joint Area Committee, its decision will not be overturned unless it is dishonest, capricious or beyond its authority under the terms of the collective bargaining agreement. *Id.* at 611 (citations omitted).

■ In this case, the question of Csanadi's seniority was submitted to the Joint Area Committee because the matter concerned the uniform interpretation and application of the collective bargaining agreement. Their decision held that Csanadi lost his seniority rights because he had failed to comply with the plain language of the se-

niority provisions of the collective bargaining agreement in effect when Csanadi became a dispatcher.[6] The contractual language clearly and unambiguously required an employee to secure a written agreement upon leaving the bargaining unit in order to preserve any seniority rights upon his subsequent return to the unit. In the absence of a written agreement, the Joint Area Committee properly held that Csanadi was not entitled to return to the collective bargaining unit of truck drivers with the 16½ years of *company* seniority he had acquired as a dispatcher. Further, Csanadi has made no allegation that the hearing of the Joint Area Committee was tainted by dishonest or capricious action, or was beyond the scope and authority of the Joint Area Committee under the terms of the collective bargaining agreement. We find, therefore, that Csanadi has failed to demonstrate that the final and binding decision of the Joint Area Committee should be overturned.

### Internal Remedies and Fair Representation

■ Csanadi's second claim is that the defendants breached the duty of fair representation by not affording him an opportunity to be heard before the Joint Area Committee, or by refusing to process his grievance subsequent to the Committee's decision. It is well settled that a union, acting as the exclusive bargaining agent for the employees in a collective bargaining unit, has a federally created statutory duty to fairly represent all members of the unit in the negotiation, administration and enforcement of the collective bargaining agreement. *Deboles v. Trans World Air-*

---

5. Article 43, section 1(g) of the National Master Freight Agreement and Central Pennsylvania Over-The-Road and Local Cartage Supplemental Agreement in effect for the period from July 1, 1973, to March 31, 1976, provides, in pertinent part:

The Joint Local City Grievance Committees shall not have jurisdiction over or authority to decide any grievance which,

(i) involve the uniform construction, application, operation or interpretation of this Agreement,

\* \* \* \* \* \*

The Joint Area Grievance Committee shall hear and decide a grievance when any party hereto contends:

1. the Joint Local City Grievance Committee has no jurisdiction or authority to hear and decide a matter because it is within the scope of (i), (ii) or (iii) above; . . ..

Article 43, section 2(f) of the same agreement provides:

It is agreed that all grievances pertaining to matters described in Section 1(g), (i), (ii) or (iii) of this Article must be referred to the Joint Area Grievance Committee.

6. *See* n. 3, *supra.*

lines, Inc., 552 F.2d 1005, 1013–1014 (3d Cir. 1977). The requirements of a union's duty of fair representation were summarized by the Supreme Court in *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 843 (1967):

> Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.

Thus, breach of the duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith. *Id.* at 190, 87 S.Ct. 903.

█ It is also well settled that exhaustion of the available internal union remedies is a necessary requirement for a plaintiff to bring a suit against a union for breach of the duty of fair representation. *Goclowski v. Penn Central Transp. Co.*, 571 F.2d 747, 757 (3d Cir. 1977); *Pawlak v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 764*, 444 F.Supp. 807, 810–811 (M.D.Pa.1977), aff'd mem., 571 F.2d 572 (3d Cir. 1978). Although there are some limited exceptions to this exhaustion requirement, *Goclowski v. Penn Central Transp. Co.*, supra, 571 F.2d at 758; *Dorn v. Meyers Parking System*, 395 F.Supp. 779 (E.D.Pa.1975), a plaintiff must comply with the intra-union appeal procedure or other available internal union remedies before he may seek relief through the courts. *Pawlak v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Help-*

ers *of America, Local Union No. 764, supra,* 444 F.Supp. at 811; see *McGovern v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 773,* 447 F.Supp. 368, 372 (E.D.Pa.1978).

In support of their motion for summary judgment, the defendants in this case argue that Csanadi failed to exhaust the full range of effective internal union remedies available to him. Specifically, the defendants argue that Article XIX of the Constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America provides an internal union appeals procedure that was available for Csanadi to protest the actions taken by the Local Union with respect to his claims. This procedure provides that Csanadi could have protested the Local Union's failure to process his grievance by filing a complaint with the Executive Board of the Local Union and, if unsuccessful, by filing an appeal with the Executive Board of the Joint Council. Further appeals may be taken to the General Executive Board of the International Union and, ultimately, to the International Convention. Finally, Article XIX, section 12 of this Constitution requires all members to exhaust these intra-union remedies before resorting to the courts for relief.[7] In response, Csanadi argues that he had no available internal union remedies because the Joint Area Committee had already ruled on the issue of his seniority and because the shop steward would not process his grievance.

█ Csanadi's response to the defendants' "exhaustion of internal union remedies" argument improperly merges both of his claims against the Local Union and its

---

7. Article XIX, section 12 of the Constitution adopted in July of 1971 by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America provides:

> (a). Every member, officer, elected Business Agent, Local Union, Joint Council or other subordinate body against whom charges have been preferred and disciplinary action taken as a result thereof, or against whom adverse rulings or decisions have been rendered or who claims to be aggrieved, shall be obliged to exhaust all remedies provided for in this Constitution and by the Interna-

tional Union before resorting to any court, tribunal or agency against the International Union, any subordinate body or any officer or employee thereof.

> \* \* \* \* \* . \*

> (c). The appeals procedure provided herein is also available to and must be followed by any member who is aggrieved by any decision, ruling, opinion or action of the Local Union, membership, officers or Executive Board, excluding collective bargaining matters.

president. First, as discussed above, the collective bargaining matter of Csanadi's seniority was properly brought by the Local Union before the Joint Area Committee for an interpretive opinion, and its decision is final and binding upon the parties. Second, the claim of unfair representation by the defendants required exhaustion of the full range of internal union remedies available to Csanadi pursuant to Article XIX of union's 1971 Constitution. We find, therefore, that Csanadi's failure to exhaust his internal union remedies or, in the alternative, his failure to present an adequate reason to avoid the exhaustion requirement, deprives this Court of jurisdiction to hear his complaint of unfair representation by the defendants in the handling of his grievance.

In conclusion, having found that the decision of the Joint Area Committee with respect to Csanadi's seniority is final and binding and having found that Csanadi has failed to properly exhaust his internal union remedies with respect to his claim of unfair representation by the defendants, we hold that the defendants are entitled to a judgment in their favor as a matter of law. The defendants' motions for summary judgment pursuant to Fed.R.Civ.P. 56 will, therefore, be granted.

An appropriate Order will be entered.

