John H. FAUST, Plaintiff,

v.

RCA CORPORATION, Defendant.

Civ. No. 84–1403.

United States District Court, M.D. Pennsylvania.

May 12, 1986.

Elliot B. Edley, Edley and Reishtein, Wilkes-Barre, Pa., for plaintiff.

Frank C. Sabatino, John H. Leddy, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

### PROCEDURAL HISTORY

This matter is before the court by way of defendant's Motion for Summary Judgment filed pursuant to Fed.R.Civ.P. 56(b). On October 19, 1984 the plaintiff filed a complaint against Defendant RCA Corporation (RCA) alleging three (3) common law causes of action. Jurisdiction was based upon diversity of citizenship as plaintiff is a Pennsylvania citizen and defendant a Delaware corporation. On December 10, 1984 the defendant filed a Motion to Dismiss for failure to state a claim upon which relief can be granted or, in the alternative, for Summary Judgment. On February 11, 1985, the plaintiff filed an amended complaint incorporating his previously alleged counts and adding a new count based upon Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. By Order dated April 10, 1985 the court dismissed the common law causes of action and allowed the defendant to proceed upon the Section 301 claim.

On January 31, 1986 the defendant filed a Motion for Summary Judgment and on February 18, 1986 filed a brief in support thereof. On March 4, 1986 the plaintiff filed a brief in opposition to the Motion for Summary Judgment. RCA filed its reply brief on March 13, 1986 and this matter is now ripe for disposition. For the reasons set forth below, the court will grant defendant's Motion for Summary Judgment.

## FACTUAL BACKGROUND

A brief summary of the factual background of this action is necessary for the resolution of defendant's motion.[1] The record demonstrates that the parties substantially agree upon the material facts. *See* Documents 28 and 33 of the Record.

The plaintiff, John H. Faust, commenced employment as an electrician maintenance specialist with the Keystone Job Corps Center (Center) on July 27, 1970. Defendant's Answer to Amended Complaint, Document 17 of the Record, ¶ 6. The Center is operated by a division of RCA. In furtherance of his duties, the plaintiff was required to operate a vehicle owned by the federal government.[2] On May 22, 1984 the plaintiff was discharged from his employment for a violation of the Center's Rules of Conduct. The text of this rule states in relevant part:

It is mandatory that employees comply with these Rules of Conduct (and with others that may be established in the future). Since breaking any of these Rules of Conduct could result in serious loss to the Company, the Government,

independent contractors, and other employees, the Company reserves the right to discipline, *up to and including termination of*, employees who do not abide by them. .

Involvement in any of the following types of activity is considered a violation of Company Rules of Conduct;

. . . .

Reporting to work while under the influence of intoxicants, or the *possession* or use *of intoxicants while on Company premises.*

Rules of Conduct marked as Exhibit A–1 of Appendix to Defendant's Motion to Dismiss the Complaint or, in the Alternative, to Grant Summary Judgment, Document 7 of the Record. (emphasis supplied).

The circumstances leading to the plaintiff's termination began approximately ten days prior to the actual discharge. Mr. Edward Chonskie, Center Support, Logistics Coordinator, was working in the vicinity of the maintenance garage and needed a gasoline siphon. A maintenance employee suggested that Mr. Chonskie search in the plaintiff's truck which was parked in the garage. While Mr. Chonskie was looking in the truck for the gasoline siphon he noticed two empty beer cans. Chonskie immediately reported this finding to Steve Hollock, Administrator of Fire Safety and Security. *See* Affidavit of Edward Chonskie, Document 29 of the Record, Exhibit II.

On the day of plaintiff's discharge, May 22, 1984, Hollock observed the plaintiff

---

1. In support of its motion RCA has filed affidavits from the following RCA employees: Mary Ann Victor Knox, Manager of Employee Relations; Edward A. Chonskie, Center Support, Logistics Coordinator; and, Joseph O'Hara, employee of RCA and president and business agent for Local Union 406. The depositions of the following people have been filed with the court: John H. Faust; Mary Ann Victor Knox; Elwood Petchel, Jr., Center Director; Steve Hollock, Administrator of Fire Safety and Security; and, Guenter Heimrick, Maintenance Supervisor. These depositions were all taken on the same day and bound into a single transcript, Document 30 of the Record. A copy of RCA's Rules of Conduct, the agreement between RCA and Local Union 406 and the grievance report filed by the plaintiff were also filed for the record.

The affidavit of the Plaintiff, John H. Faust, was submitted with the plaintiff's Brief in Opposition to the Motion for Summary Judgment, Document 34 of the Record. [Faust Affidavit] The court has reviewed and considered all of the above in ruling on the defendant's motion. Fed. R.Civ.P. 56(e).

2. The exact relationship between the Keystone Job Corps Center and the Federal Government is not fully explained. It is clear, however, that the Center provided vocational training for several hundred students who lived in dormitories located in the Center. The United States Government owned the vehicle which was assigned to plaintiff.

leave the Center's premises in his personal car at approximately noon. At 12:35 p.m., the plaintiff returned and parked his vehicle near the maintenance garage. Deposition of Steve Hollock, Document 30 of the Record at 39. [Hollock Deposition] At 12:50 p.m., the plaintiff departed the garage area in a maintenance vehicle. At this point, Mr. Hollock and a security guard peered into the Faust vehicle and observed a brown paper bag under the driver's seat. Hollock and the guard decided to place the automobile under observation. Hollock Deposition at 39.

At approximately 2:00 p.m., plaintiff approached his personal vehicle. Hollock observed plaintiff unlock the door and remove the brown paper bag. Faust relocked the car and drove off in the maintenance vehicle. Mr. Hollock proceeded to follow Faust and, via radio, requested the security guard to check the plaintiff's vehicle and confirm that the bag had been removed. While Hollock was following Faust, he received radio confirmation from the guard that the bag had been removed. *Id.* at 40–41. Hollock and Faust simultaneously arrived at the maintenance garage where he approached Faust who had remained seated inside the maintenance vehicle. Hollock asked to see the bag and Faust voluntarily handed it to him. The bag contained two unopened cans of beer. *Id.* at 41. Mr. Hollock confiscated the beer and immediately reported the incident to the Center Director, Elwood Petchel. *Id.* at 42. At deposition, Hollock testified that he provided Mr. Petchel with "a very detailed report of exactly what happened." *Id.* at 45.

After receiving this information, Mr. Petchel conferred with Mary Ann Victor Knox, Manager of Employee Relations, and Gregory Joseph, Administrator and Support Manager. Deposition of Elwood Petchel, Jr., Document 30 of the Record at 13, [Petchel Deposition]; Deposition of Mary Ann Victor Knox, Document 30 of the Record at

54, [Knox Deposition]. This group collectively decided that termination was the appropriate sanction and the plaintiff was informed of this decision. Knox Deposition at 54.

At approximately 4:00 p.m., the plaintiff met with Petchel, Knox and Joseph. At this meeting, Mr. Faust was again advised that he was being terminated. Deposition of John Faust, Document 31 of the Record at 58, 59 [Faust Deposition].

On May 23, 1984, plaintiff filed a grievance report and, on the same day, a meeting was held pursuant to Section 13.02 of the agreement between RCA and Local Union 406 (Local 406).[3] The plaintiff's grievance, which protested his discharge, could not be resolved and a second meeting was scheduled. This second meeting was, again, held pursuant to Section 13.02 of the agreement between Local 406 and RCA. The respective parties were again unable to resolve the matter and the Company adhered to its decision to terminate the plaintiff. It would appear from a review of the record that different representatives were present at each meeting.

Pursuant to the agreement, the Union and Mr. Faust appealed the decision and the grievance was scheduled for a third meeting. This meeting was held on May 29, 1984. The plaintiff was represented by Chief Steward Joseph Pollakusky and Joseph O'Hara, President and Business Agent of the Union. The Center was represented by Petchel, Knox and Joseph. Affidavit of Joseph O'Hara, Document 29 of the Record—Exhibit II, ¶ 5 [O'Hara Affidavit].

After Mr. Petchel had presented the defendant's position, Faust, O'Hara and Pollakusky left the room. O'Hara Affidavit ¶ 6, Faust Deposition at 61. The affidavit executed by O'Hara states that Faust was no longer interested in challenging his discharge but was only concerned with what type of job reference he would receive and

---

**3.** This agreement provided that a grievance shall be negotiated in four steps. The first three steps require meetings between management and representatives of Local 406. If the grievance is still unresolved, the matter is to be submitted to binding arbitration. The agreement is marked as "Exhibit A–2" and is part of the Appendix to Defendant's Motion to Dismiss the Complaint or, in the alternative, to Grant Summary Judgment, Document 7 of the Record.

his eligibility to receive unemployment compensation. O'Hara Affidavit, ¶ 6. *See also* Faust Deposition at 61, 62.

Plaintiff paints a different picture of what transpired at the May 29, 1984 meeting. Faust alleges that O'Hara "tried very hard to convince me that I could not go any further with my grievance and that I would have no rights." Faust Affidavit, ¶ 2. At deposition plaintiff testified that he had no choice but to withdraw his grievance because the Union would not support it.

The three men then returned to the meeting and O'Hara "asked what treatment would be afforded Faust with respect to job references and unemployment compensation if he withdrew the grievance." O'Hara Affidavit, ¶ 7. Mrs. Knox then explained the Center's position with regard to unemployment compensation claims and employment references. Mrs. Knox stated that the Center would follow its standard procedures with regard to these matters. Before a claimant is eligible to receive unemployment compensation the employer is apparently required to provide the Pennsylvania Office of Employment Security with certain information. The Center's standard procedure dictated that it only submit to the Office of Employment Security a copy of the Center's Rules of Conduct and a copy of the report describing the circumstances of the discharge prepared by Gregory Joseph. Further, the Center would not send a representative to an unemployment compensation appeal hearing, in the event such a hearing was required.[4] Finally, in the event the Center was requested to provide Faust with a job reference it would only supply a prospective employer with the following information: date of hire and termination; and, position held while employed. O'Hara Affidavit ¶ 7, Knox Deposition at 63, 64. O'Hara's affidavit then

states that Faust was satisfied with this explanation and he voluntarily withdrew his grievance. O'Hara Affidavit, ¶ 8.

The following notation was added to the grievance report which Faust originally filed on May 23, 1984: "Union agrees to withdraw this grievance without prejudice." The report is then signed by the involved parties including the plaintiff and dated May 29, 1984. *See* Document 7 of the Record, Exhibit A–3.

The plaintiff does not dispute the fact that he possessed alcoholic beverages on Center property during his regular work hours. Faust Deposition at 54. Faust also was aware that possession of alcohol on Center property was prohibited but did not believe that mere possession would result in termination. Faust Deposition at 36.

## MERITS

Rule 56 of the Federal Rules of Civil Procedure provides that a trial court may enter summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on such a motion, the court is to resolve any issues of fact against the moving party. *Hollinger v. Wagner Mining Equipment Company*, 667 F.2d 402 (3d Cir.1981). "However, when there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Peterson v. Lehigh Valley Dist. Counsel*, 676 F.2d 81, 84 (3d Cir.1982). Rule 56(e) further provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party

---

**4.** At deposition Knox testified that the Center would never send a representative to an unemployment compensation appeal hearing. Knox Deposition at 64. The affidavit submitted by Joseph O'Hara avers that Faust was told the Center would "probably not" send a representative. O'Hara Affidavit at ¶ 7. At deposition Faust stated: "the thing I got out of the meeting was, okay, retract the grievance, we won't send nothing in to unemployment...." Faust Depo-

sition at 61. Although the exact circumstances are unclear, plaintiff received unemployment benefits for a period of time. The Office of Employment Security then terminated plaintiff's benefits and requested that Faust reimburse it for past benefits received. Faust appealed this decision and a hearing was held. The Center did not send a representative to this hearing and plaintiff's benefits were reinstated. Faust Deposition at 72–73.

may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

The defendant advances three arguments in support of its Motion for Summary Judgment. First, the plaintiff failed to exhaust the available internal union remedies. Second, Faust has presented no evidence to support his contention that the union breached its duty of fair representation. Finally, the defendant contends that it has established, for purposes of summary judgment, that the defendant did not breach the collective bargaining agreement when it discharged the plaintiff. Defendant's Brief in Support of Motion for Summary Judgment, Document 29 of the Record at 8—9.

The court agrees that the plaintiff failed to exhaust internal union remedies and this alone bars plaintiff's cause of action. Even assuming that such exhaustion was unnecessary, the undisputed relevant facts demonstrate that the Union did not breach its statutory duty of fair representation and the defendant did not breach the collective bargaining agreement when it terminated plaintiff's employment on May 22, 1984.

## EXHAUSTION OF INTERNAL UNION REMEDIES

■ In *Clayton v. International Union, Automobile Aerospace & Agricultural Implement Workers of America*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), the Supreme Court held that only under limited circumstances would exhaustion of internal union procedures be ex-

cused. The Court ruled that "where an internal union appeals procedure cannot result in reactivation of the employee's grievance or an award of the complete relief sought in his § 301 suit, exhaustion will not be required with respect to either the suit against the employer or the suit against the union." *Id.* at 685, 101 S.Ct. at 2093.

The affidavit submitted by Union President Joseph O'Hara establishes that Local 406 provides an internal appeal procedure for union members who disagree with the manner in which their grievances are handled. The procedure requires the aggrieved member to first seek relief from the Executive Board of Local 406 and then from the membership assembled at a regular meeting. Both of these bodies have the authority to reinstate any grievance which O'Hara considers to be lacking in merit. O'Hara Affidavit, ¶ 11.[5] Consequently, plaintiff is required to exhaust the internal remedies before this court can exercise jurisdiction over this matter. "We find, therefore, that Csandi's failure to exhaust his internal union remedies or, in the alternative, his failure to present an adequate reason to avoid the exhaustion requirement, deprives this Court of jurisdiction to hear his complaint of unfair representation...." *Csanadi v. Teamsters, Chauffeurs, Warehousemen and Helpers Local Union No. 773*, 463 F.Supp. 276, 282 (E.D. Pa.1978).

There are, however, certain limited instances where a court may excuse the failure to exhaust internal union remedies. The Supreme Court in *Clayton* emphasized that the district court must retain its dis-

---

**5.** This internal union appeal procedure is also outlined in the defendant's Statement of Material Facts to which there is no genuine issue to be tried. Document 28 of the Record ¶ 10. Local Rule 401.4 requires that a party moving for summary judgment submit a statement of material facts to which there is no genuine issue to be tried. The opposing party is then required to respond by controverting or admitting the same. If an allegation is not controverted it is deemed admitted. The plaintiff responded to paragraph 10 of the defendant's Statement of Material Facts by stating: "This fact is not relevant to this proceeding." Plaintiff's Statement Controverting Defendant's Statement of Material Facts, Document 33 of the Record, ¶ 10. [Plaintiff's

Statement] As the statement is not controverted, it will be deemed admitted.

Paragraph 12 of the defendant's statement contends that the plaintiff "never invoked the Local 406 internal appeal procedure." Document 28 of the Record, ¶ 12. The plaintiff admits that this statement is true. Plaintiff's Statement, Document 33 of the Record, ¶ 12. Also, the plaintiff's Brief in Opposition to the Motion for Summary Judgment argues that Faust was not required to exhaust all internal union remedies. Plaintiff's Brief in Opposition to the Motion for Summary Judgment, Document 34 of the Record at 5. Therefore, the plaintiff concedes that an internal union remedy was available.

cretion as to when exhaustion should be required. *Clayton* listed "at least three factors" which would allow a court to excuse an employee's failure to exhaust:

> first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

*Clayton, supra,* 451 U.S. at 689, 101 S.Ct. at 2095.

It is undisputed that Faust never invoked the internal appeal process. Plaintiff's Statement, Document 33 of the Record at ¶ 12. In opposition to the exhaustion requirement, the plaintiff asserts that "the law does not require the exhaustion of internal union remedies where same would be a nullity." Plaintiff's Brief in Opposition to the Motion for Summary Judgment, Document 34 of the Record at 2. Plaintiff's affidavit and brief fail to state any facts whatsoever in support of this conclusion.

An examination of the record discloses that the following would apparently be plaintiff's harshest criticism of the treatment afforded his grievance by Local 406. As stated above, Faust alleges that: "Mr. O'Hara tried very hard to convince me that I could not go any further with my grievance and that I would have no rights." Faust Affidavit, ¶ 2. At his deposition the plaintiff testified that during the May 29, 1984 meeting, O'Hara told him that if the grievance continued to arbitration, the matter would be decided against Faust. While Faust stated that O'Hara told him he would not support taking the matter to arbitration, this statement is undermined by Faust quoting O'Hara's "exact words" as saying that they could go to arbitration but would lose. At deposition the following colloquy occurred between plaintiff and his attorney:

> Q: Did Mr. O'Hara ever tell you that the Union would help you get your job back?
>
> A: No.
>
> Q: Did they make any offer to help you?
>
> A: They said they could take it to arbitration but they would lose, that's his [O'Hara] exact words.

Faust Deposition at 90.

Even assuming that the above amounts to a refusal on the Union's part to continue the appeal process, the plaintiff's claim is, nevertheless, barred because he failed to exhaust his internal remedies. *Clayton v. International Union, Automobile Aerospace & Agricultural Implement Workers of America, supra.*

Applying the *Clayton* exceptions to the instant factual situation, the record is devoid of any inference that an exception might exist. There is no evidence that an appeal to the Executive Board of Local 406, or to the membership at a regular meeting, would be futile. Plaintiff merely alleges that an appeal would be a "nullity" but does not support this conclusion with any citation to the record. It is clear that the Executive Board and the general membership had the power, even assuming O'Hara's opposition, to reactivate the grievance. Finally, there is no allegation that exhaustion would have unreasonably delayed plaintiff's opportunity to obtain a judicial hearing and fair representation.

## FAIR REPRESENTATION

■ The duty of fair representation is imposed on labor unions because of their status as the exclusive bargaining representative for all employees in a given bargaining unit. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Peterson v. Kennedy,* 771 F.2d 1244 (9th Cir.1985); *Bazarte v. United Transportation Union,* 429 F.2d 868 (3d Cir.1970). A union breaches its duty of fair representation when its "conduct toward a member of the collective

bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes, supra,* 386 U.S. at 190, 87 S.Ct. at 916. A union is required "to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.* at 177, 87 S.Ct. at 909.

The Supreme Court has recognized that the union must retain discretion in determining whether a certain grievance merits consideration. *Id.* "The union has an obligation in exercising its power as bargaining agent to act fairly under the collective bargaining agreement and not to assert or press grievances which it believes in good faith do not warrant such action." *Bazarte v. United Transportation Union, supra* at 872.

▆ There is no absolute right to compel a union to process a grievance through any of the preliminary steps or to arbitration. *Vaca v. Sipes, supra; Adams v. UAW Local 1193,* 96 L.R.R.M. 2867 (M.D. Pa.1977). The mere refusal of a union to take a complaint to arbitration does not establish a breach of the Union's duty of fair representation. *Findley v. Jones Motor Freight,* 639 F.2d 953 (3d Cir.1981). A union is not required to prosecute a grievance that it honestly believes lacks merit. *Vaca v. Sipes, supra.* There is no duty to prosecute a frivolous claim. *Dutrisac v. Caterpillar Tractor Company,* 749 F.2d 1270 (9th Cir.1983). "Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not so frivolous disputes." *Humphrey v. Moore, supra,* 375 U.S. at 349, 84 S.Ct. at 371.

▆ The plaintiff contends that "the Union did not meet its duty of fair representation." Plaintiff's Brief in Opposition to Motion for Summary Judgment, Document 34 of the Record at 6. The plaintiff fails to support this argument with any citation to the record. Indeed, a review of the record reveals that there is not a scintilla of evidence to support such an allegation.

It is clear that O'Hara regarded plaintiff's grievance as meritless and advised Faust that he was confident the matter ultimately would be decided against him. Faust Deposition at 62; O'Hara Affidavit ¶ 9. Assuming, *arguendo,* that O'Hara's advice was tantamount to a refusal to prosecute the grievance any further, the court holds that such a refusal was justified under the circumstances and was not a violation of the union's duty of fair representation.

At the time the grievance was withdrawn, the union had twice conferred with Center representatives in an effort to resolve the matter. During the third meeting, O'Hara asked what position the Center would take with respect to job references and unemployment compensation. Knox stated that the Center would follow its standard procedure. Although this would not assure plaintiff of receiving unemployment compensation benefits, it did guarantee that the reason for discharge would not be communicated to a prospective employer. After receiving this concession, the union and Faust withdrew the grievance. Faust Deposition at 61; O'Hara Affidavit, ¶¶ 8–9; Knox Deposition at 63–4.

As plaintiff never disputed the fact that he possessed alcohol while on Center property, O'Hara was justified in evaluating plaintiff's grievance as frivolous. The union did not breach the duty of fair representation by withdrawing the grievance after receiving the above described concession from the defendant.

### WRONGFUL DISCHARGE CLAIM

▆ The court also finds against the plaintiff on the merits of his claim against his employer. To recover against defendant, it must be established that plaintiff "did not receive fair representation from the union as well as proving his claim against the employer." *Findley v. Jones Motor Freight, supra,* at 957 (3d Cir.1981) (citing *Vaca v. Sipes, supra*); *Aiello v. Apex Marine Corporation,* 610 F.Supp. 1255 (E.D.Pa.1985). "The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement." *DelCostello v. International Brotherhood of Teamsters,*

462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983). "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *Id.* at 165, 103 S.Ct. at 1291.

Faust was discharged from employment on May 22, 1984 for violating a work rule which prohibits possession of intoxicants on Center property. The Center had mailed a copy of the Rules of Conduct to all employees in 1983 and 1984. Knox Deposition at 64, 65. Plaintiff was cognizant of the fact that possession of alcohol on Center premises was prohibited. Faust Deposition at 36. Plaintiff does not dispute the fact that he had taken alcohol onto Center property. Faust Deposition at 54.

Plaintiff's brief does not explain how defendant breached the agreement reached by the Union and defendant. It is patently clear that the Rules of Conduct authorize defendant to dismiss an employee who is in possession of alcohol. It is uncontradicted that the decision to terminate Faust was reached only after Knox, Petchel and Joseph considered the following factors: First, Faust was a "long term" employee; second, Faust was regarded as a competent electrician; and third, the seriousness of the violation considering that Faust was required to drive a vehicle and work in a potentially dangerous electrical environment. Knox Deposition at 55, 56; Petchel Deposition at 11.

Without explanation plaintiff's brief states "the employer defendant breached the collective bargaining agreement by the summary termination in violation of the just cause requirement for termination...." Plaintiff's Brief in Opposition to the Motion for Summary Judgment, Document 34 of the Record at 6. A review of the deposition testimony of Mr. Petchel and Mrs. Knox indicate that the plaintiff was apparently attempting to establish that defendant had not terminated other employees who violated the rule pertaining to alcohol. These depositions, however, establish that all employees who violated this rule were terminated. Petchel gave the following testimony in his deposition:

Q: What was the basis of his [Faust] termination?

A: It was the possession of an alcoholic beverage during the work hours.

Q: Was it the policy of this center to terminate immediately anyone that was found in possession of an alcoholic beverage?

A: In this situation, yes.

. . . .

Q: Okay. Now please answer the first question, was it the general policy to terminate.

A: Since I had been the center director, yes.

Q: And what were the circumstances in this situation?

A: The circumstances that I had to evaluate, number one, the alcoholic beverage being on the work place, transferred from a personal vehicle to a Government vehicle. A situation that we have 700 students on the center. We have an employee who has an alcoholic beverage in his possession, who works with some very sensitive and dangerous type of items. We're not only talking about the electrical part of it, but we're also talking about the operation of a motor vehicle; and, again, not only 700 students being on the site at the time, but also other staff.

Petchel Deposition at 10–11.

Mary Ann Victor Knox testified at deposition that she could recall only two other incidents where an employee violated the Rules of Conduct relating to alcohol. Knox testified that both of these people were terminated. Knox Deposition at 56.

A review of the depositions reveal that the Center has periodically authorized social events where alcohol was allowed to be served. Knox Deposition at 68. Allowing the service of alcohol at a Center social event cannot be equated with possession of alcohol while on duty during working hours contrary to an established written policy. The situations are simply not comparable and involve different circumstances. Accommodating such gatherings does not im-

pair, or eliminate, the determination that plaintiff violated a company rule of which he was aware.

On the basis of the above, the court holds that the defendant was justified under the collective bargaining agreement in its decision to terminate plaintiff. For all of the above reasons, summary judgment for the defendant is proper.

An appropriate Order will enter.